Mildred Morrow Foley appeals from a judgment entered pursuant to a jury verdict in favor of State Farm Fire and Casualty Insurance Company and Kenneth Baker on the issues of breach of contract and *Page 935 
slander. We affirm the judgment of the trial court.
On September 3, 1982, a house owned by Mildred Morrow Foley was damaged by fire within the city limits of Opp, Alabama. At the time of the fire, Mildred Foley, her husband Fred Foley, and her adult son William W. Morrow, resided in the house. The house was insured by defendant State Farm under a typical homeowner's policy. There was $67,110.00 of insurance coverage on the house and its contents and for additional living expenses at the time of the fire in question. Mrs. Foley received checks from State Farm for $23,259.89 for damage to the house, and a check for $2,000.00 for additional living expenses. She also received a check for $7,598.75 for the contents, but she did not negotiate this check.
An investigation of the fire was conducted, and arson was suspected. No criminal charges were filed, however. Opp Fire Chief Jake Benton testified that his investigation of the premises revealed that three separate fires were started in the house at approximately the same time. Chief Benton stated that this indicated that the fire was intentionally set. Furthermore, a laboratory analysis of evidence taken from the scene, including two plastic jugs, revealed the presence of kerosene or petroleum. Chief Benton testified that the most typical kind of motive for an intentionally set fire is financial. Further investigation revealed that William W. Morrow had financial problems with a bakery business that had closed down.
There was evidence that Mrs. and Mr. Foley and William W. Morrow had borrowed $17,500.00 on August 25, 1981, for the purchase of the bakery. The loan, to be repaid by monthly installments, was secured by a real property mortgage on the house that was damaged by the fire in question. Furthermore, at the time of the fire, two installments were overdue. There was also evidence that William Morrow had borrowed an additional $1,000.00 from the bank on June 24, 1982. This loan was secured by bakery equipment and it was to be repaid in monthly installments. No installments were ever made. At the time of the fire, this loan was also two installments behind.
Mrs. Foley testified that she did not know of anyone who may have had any reason to burn her house and that the only persons who had keys to the house were her family members.
On the night of the fire, Mrs. Foley testified that she and her husband locked the house and then went to an auction. She testified that while she and her husband were at the auction, someone told them about the fire and that they immediately left to return to their home. Mrs. Foley contends that she fully cooperated with State Farm throughout the investigation and that she complied with the policy provisions in connection with her claim. This is disputed by State Farm, as evidenced by its numerous letters to her requesting that she cooperate with State Farm in the investigation and that she provide it with the necessary documentation to process her claim, as required in the policy.
Mrs. Foley testified that when State Farm adjuster Baker talked to her about the fire, he said to her: "[W]e found a mysterious liquid in your son's bedroom. The insurance company does not pay for anyone burning their property. That is called arson." Mrs. Foley stated that Baker made these remarks in the presence of her son and husband, and she says the meaning and import of the statement were that she had burned her own house in order to recover the proceeds of the insurance policy. As a result of this alleged defamation, she claimed to have suffered great mental anguish, embarrassment, humiliation, and cardiac disturbance, requiring her to seek special medical care and counseling.
Mrs. Foley claimed that Baker's allegedly slanderous statement was false and was made with malice intentionally calculated to harm her, and that Baker and State Farm knew she suffered from heart ailments and a nervous condition. Mrs. Foley sought $5,000,000.00 in punitive damages *Page 936 
for this alleged defamation. She also demanded judgment on the insurance contract for $39,800.00 (the amount of the repair estimate obtained by Mrs. Foley, but which she admittedly never submitted to State Farm), less $25,259.89 which had already been paid by State Farm to her and the mortgagee bank.
Both claims were submitted to the jury, and a verdict was returned in favor of both State Farm and Baker. Mrs. Foley's motion for new trial was denied, and this appeal followed.
Two sections of the insurance policy are pertinent to this controversy, and they are as follows:
 "`[I]nsured' means you and the following residents of your household:
"a. your relatives;
 "b. any other person under the age of 21 who is in the care of any person named above.
". . .
 "Concealment or Fraud. This entire policy shall be void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to his insurance."
Mrs. Foley raises numerous issues for this Court's review. However, the gist of all of the issues is whether the evidence of arson allegedly committed by Mrs. Foley's son, William W. Morrow, was properly admitted in this case, in light of our holding in Hosey v. Seibles Bruce Group, South Carolina Ins.Co., 363 So.2d 751 (Ala. 1978).
In Hosey, supra, Felston Hosey, Sr., an insured of the defendant insurance company, sought to recover on an insurance policy covering property that had been damaged by fire. The damaged property consisted of: (1) a dwelling, owned in fee simple by Mr. Hosey, subject to mortgages; (2) personal property owned by Mr. Hosey individually; (3) personal property owned by Mrs. Hosey individually; and (4) personal property owned by Mr. and Mrs. Hosey jointly. Both Mr. and Mrs. Hosey executed a "Sworn Statement in Proof of Loss," which essentially stated that the loss did not originate by any act, design, or procurement on the part of the insureds.
Subsequent to the fire, Mrs. Hosey was convicted of arson in regard to the insured property, but Mr. Hosey was neither charged nor implicated in the criminal activity. The defendant insurance company refused to pay the claims of either Mr. or Mrs. Hosey, relying on the following provisions and definition in the applicable insurance policy:
 "1) `This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.'
 "2) `. . . Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring
 "`(a) while the hazard is increased by any means within the control or knowledge of the insured . . .'"
". . .
"`8. DEFINITIONS . . .
"`a. "Insured" means
 "`(1) the Named Insured stated in the Declarations of this policy;
 "`(2) if residents of the Named Insured's household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of any insured. . . .'"
363 So.2d at 752.
Mr. Hosey initiated suit, alleging breach of the insurance contract. The trial judge, in charging the jury, essentially stated that according to the provisions and definition sections, supra, Mrs. Hosey was an insured, and Mr. Hosey could not recover if the jury found that his wife, a co-insured, caused the fire. Mr. Hosey objected to this charge, claiming it was a misstatement of the law. The insurance company contended that the law did not permit an innocent owner to recover on a policy of insurance where his co-owner/co-insured had wilfully *Page 937 
set the jointly owned and insured property on fire. The jury returned a verdict for the insurance company.
We acknowledged in Hosey that some jurisdictions agreed with the insurance company's position, but we declined to follow it. Rather we adopted the rule enunciated in Howell v. Ohio Cas.Ins. Co., 130 N.J. Super. 350, 327 A.2d 240, 243 (1974), quoted in Hosey, which provides:
 "`. . . With respect to a fire insurance policy covering the interests of more than one insured . . . the obligation of the carrier should be considered several as to each person insured, and the fraud or misconduct of one insured should not bar recovery by the innocent co-insureds to the extent of their respective interests in the property involved.'"
363 So.2d at 754.
Thus, in applying the above rule, we held in Hosey that the insured interests of Mr. and Mrs. Hosey were severable; thus, neither the arson nor the fraud of Mrs. Hosey in filing a false proof of loss statement precluded recovery by Mr. Hosey to the extent of his interest in the insured property.
In this case, Mrs. Foley, relying on Hosey, contends that the trial court erred when it allowed the defense to present evidence suggesting that Mrs. Foley's son, William W. Morrow, committed arson in regard to the insured property. Mrs. Foley argues that such evidence prejudiced the jury against her claims, thereby denying her the right to fully recover for the damages sustained to her own property interests. Mrs. Foley contends that State Farm had absolved her of any wrongdoing with regard to the suspected arson, and so indicated in a letter dated January 1, 1983, which stated in part:
 "Please understand that no one is even suggesting that either you or your husband intentionally started this fire or even had any knowledge that some other person may have intentionally started the fire. To the contrary, State Farm's investigation to this point has revealed no evidence of any wrongdoing on the part of you or your husband."
Thus, Mrs. Foley, citing Hosey and Orient Ins. Co. v. Parkhill,170 F.2d 510 (5th Cir. 1948), argues that the insurance company's defense of arson or wilfull burning cannot be used to defeat her recovery, because there has been no finding of her knowledge, authorization, or ratification of any such burning.
There are two significant differences between the facts in this case and in the facts in Hosey, supra. First is the fact that Mrs. Foley sought damages for defamation. The allegedly defamatory statement which was made by State Farm's agent, Kenneth Baker, was: "[W]e found a mysterious liquid in your son's bedroom. The insurance company does not pay for anyone burning their property. That is called arson."
Truth is an absolute defense to defamation, Liberty LoanCorp. of Gadsden v. Mizell, 410 So.2d 45 (Ala. 1982), and State Farm specially pleaded this defense. Furthermore, Ala. Code 1975, § 6-5-182, requires that in an action for slander, the plaintiff must prove the facts showing that the allegedly defamatory matter was published or spoken of the plaintiff.
Again, State Farm, in defense of the defamation allegation, denies that it defamed Mrs. Foley. Thus, by virtue of Mrs. Foley's claim for damages for the allegedly slanderous statement recited above, evidence of arson was properly admitted to support State Farm's defense of truth — that arson had been in fact committed by an "insured" as defined in the policy, Ripps v. Herrington, 241 Ala. 209, 1 So.2d 899 (1941), and to support State Farm's defense that the words spoken were not spoken of Mrs. Foley.
The second distinction between Hosey and the case at bar is that in Hosey the insurance company refused to recognize the right of the innocent insured to recover anything under the policy, because of the fraudulent acts of the co-insured spouse. State Farm, on the other hand, paid Mrs. Foley (and the mortgagee bank) $23,259.89 for the house and $2,000.00 for living expenses, *Page 938 
and it offered to pay her $7,598.74 for her personal property. State Farm contended that Mrs. Foley had been fully compensated prior to trial.
The issue of whether State Farm paid the amount due under the terms of the policy for damages to the house was submitted to the jury for its determination. The jury decided that State Farm had met its obligation when it paid Mrs. Foley, prior to trial, the amount of $25,259.89. Feazell v. Campbell,358 So.2d 1017 (Ala. 1978); Rosen v. Lawson, 281 Ala. 351, 202 So.2d 716
(1967).
The trial judge denied Mrs. Foley's motion for new trial, and we have long recognized that a strong presumption of correctness is indulged in favor of the trial court regarding its rulings on a motion for new trial. Alabama Farm BureauMutual Casualty Ins. Co. v. Moore, 435 So.2d 712 (Ala. 1983). Having reviewed the record and Mrs. Foley's contentions, we find no error in the trial court's ruling. Its judgment, therefore, is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.