802 So.2d 200 (2001)
E. Lamar MOONEYHAM
v.
STATE BOARD OF CHIROPRACTIC EXAMINERS et al.
1991825.
Supreme Court of Alabama.
May 11, 2001.
*201 Bradley R. Byrne and Jannea S. Rogers of Adams & Reese, L.L.P., Mobile; and Roy E. Kadel, Mobile, for appellant.
James S. Ward of Corley, Moncus & Ward, P.C., Birmingham; and Alyce S. Robertson, Office of the Attorney General, for appellees State Board of Chiropractic Examiners, Stephen L. Below, E. Rockford McCord, O.E. Corfman, Benjamine F. Hooker, Donald B. Williams, Lyle W. Cole, Gregory A. Kuhlmxanm, James A. May, John L. Campbell, and John L. Stump.
Charles Campbell and Bill Clifford, Office of the Attorney General, for appellee Sidney Sakwa.
Mark A. Newell and Jeremy P. Taylor of Janecky Newell, P.C., Mobile, for appellee E. Rockford McCord and O.E. Corfman.
BROWN, Justice.
E. Lamar Mooneyham appeals from the Baldwin Circuit Court's judgment dismissing his claims against the State Board of Chiropractic Examiners ("the Board") and certain Board members, including Stephen L. Below; E. Rockford McCord; O.E. Corfman; Benjamin F. Hooker; Donald B. Williams; Lyle W. Cole; Gregory A. Kuhlman; James A. May; John L. Campbell; John L. Stump; and Sydney Sakwa. *202 Mooneyham's claims include allegations of defamation; tortious interference with business relations; malicious prosecution; conspiracy; and a violation of his federal constitutional rights (brought pursuant to 42 U.S.C. § 1983). The claims arise out of the Board's unsuccessful attempt to take disciplinary action against him. The Board and the individual defendants timely moved to dismiss Mooneyham's claims, pursuant to Rule 12(b)(6), Ala.R.Civ.P., for failing to state claims for which relief could be granted. Specifically, the defendants argued that they were all entitled to various forms of immunity. The circuit court granted the motions. We affirm the judgment of dismissal.

I.
According to his complaint, Mooneyham has been licensed to practice chiropractic in Alabama since 1990. During that time, he alleges, he has formed business relationships with certain insurance companies. He alleges that those relationships involve performing "utilization reviews" of other Alabama chiropractors. Mooneyham also claims that he has frequently testified as an expert witness in civil proceedings against other Alabama chiropractors. According to Mooneyham's complaint, much of his work has been adverse to the interests of certain Board members or their families and associates.
On February 8, 1995, the Board, by way of an administrative complaint, charged Mooneyham with six violations of various laws, rules, or regulations applicable to the chiropractic profession. The Board ultimately found Mooneyham guilty of four violations and imposed punishment that included a $14,600 fine and a revocation of his license to practice chiropractic in Alabama. The adjudication and judgment passed upon votes by the defendants Below; McCord; Corfman; Hooker; Williams; Cole; Kuhlman; May; Campbell; Stump; and Sakwa. Mooneyham's complaint alleges that the sanctions imposed on him were among the most severe sanctions ever imposed by the Board for any misconduct, including that seen in the most serious cases. Mooneyham further alleged that after August 6, 1997, Hooker, Williams, Cole, Kuhlman, May, and Sakwa maliciously, willfully, wantonly, and in bad faith authorized the communication of the Board's findings to specific third parties, including the State of Florida and the Federation of Chiropractic Licensing Boards, and made those findings a matter of public record.
On August 12, 1997, Mooneyham appealed the Board's findings and its punishment order to the Montgomery Circuit Court. After hearing evidence, that court found that Mooneyham's disciplinary action had been taken, and the punishment imposed, in retaliation for his performing utilization reviews for insurance companies and for the adverse testimony he had given in civil proceedings against certain Alabama chiropractors. The court concluded that the Board's conduct had been arbitrary and capricious, and it ordered the reinstatement of Mooneyham's license, a reversal of the fine, and a dismissal of all other proceedings against Mooneyham. The Court of Civil Appeals, on February 26, 1999, affirmed the circuit court's order, without an opinion. State Bd. of Chiropractic Exam'rs v. Mooneyham (No. 2980001), 776 So.2d 223 (Ala.Civ.App.1999) (table). The Board did not petition this Court for certiorari review.
On August 5, 1999, Mooneyham initiated the present lawsuit in the Baldwin Circuit Court, against the Board and certain members. The Board and those named members filed motions to dismiss; they offered several grounds on which they contended the complaint should be dismissed, including *203 the defenses of sovereign immunity and quasi-judicial immunity. On May 19, 2000, the circuit court granted the motions and dismissed all of Mooneyham's claims.
We are mindful that "[m]otions to dismiss under Rule 12(b)(6) should be granted sparingly, and [that] such a dismissal is proper only when it appears beyond a doubt that the ... plaintiff can prove no set of facts in support of the claim which would entitle the ... plaintiff to relief." Quality Homes Co. v. Sears, Roebuck & Co., 496 So.2d 1, 2 (Ala.1986). We also recognize the well-established principle that "[m]atters outside the pleadings should never be considered in deciding whether to grant a [Rule] 12(b)(6) motion." Hales v. First Nat'l Bank of Mobile, 380 So.2d 797, 800 (Ala. 1980).
As we have said, Mooneyham has appealed from the circuit court's judgment dismissing his five claims against the Board and the named members. Although the defense of immunity may be properly raised as to each of Mooneyham's claims, we begin our review as to Mooneyham's defamation and conspiracy claims at an earlier analytical stage. We conclude that those claims are barred, without regard to the defendants' immunity defenses. As to the remaining claims, we conclude that the defendants enjoy absolute or qualified immunity from suit and that the dismissal, therefore, was proper.

II.
The first issue we consider is whether Mooneyham can prevail on his defamation claim under any imaginable circumstances, considering the facts pleaded in his complaint. We are particularly interested in Mooneyham's allegations that the Board found him guilty of four violations of Alabama's professional code of conduct for chiropractors. We note that Mooneyham alleged as a fact that the Board's adjudication of his disciplinary matter occurred before the time when he alleges certain members of the Board authorized communications to third parties notifying those third persons of the conclusion and result of the Board's proceedings against him.
Mooneyham's complaint indicates that he has essentially pleaded that the Board communicated accurate and true information at the time the alleged communications were authorized and at the time they were made, the Board had made its ruling and that ruling had not yet been reversed by the Montgomery Circuit Court. It is well established that truth is an absolute defense against a defamation claim. Drill Parts & Serv. Co. v. Joy Mfg. Co., 619 So.2d 1280, 1289 (Ala.1993); Foley v. State Farm Fire & Cas. Ins. Co., 491 So.2d 934, 937 (Ala.1986); and Liberty Loan Corp. of Gadsden v. Mizell, 410 So.2d 45, 49 (Ala.1982). Because Mooneyham's defamation claim alleges a truthful communication, he cannot prevail even if we accept his allegations as true. Therefore, the trial court properly dismissed this claim against the defendants.

III.
We next address the immunity of the Board itself. The Board argues that it is a State agency and that as a State agency it enjoys absolute immunity from any lawsuit. We agree.
Article I, § 14, of the Constitution of 1901, provides: "[T]he State of Alabama shall never be made a defendant in any court of law or equity." With respect to the word "State," we have said:
"This Court has held that `the use of the word "State" in Section 14 was intended to protect from suit only immediate and strictly governmental agencies of the *204 State.' Tallaseehatchie Creek Watershed Conservancy Dist. v. Allred, 620 So.2d 628, 631 (Ala.1993) (quoting Thomas v. Alabama Mun. Elec. Auth., 432 So.2d 470, 480 (Ala.1983)). Thus, we must determine what constitutes an `immediate and strictly governmental agenc[y].' The test for determining whether a legislatively created body is an immediate and strictly governmental agency for purposes of a sovereign-immunity analysis involves an assessment of (1) the character of the power delegated to the body; (2) the relation of the body to the State; and (3) the nature of the function performed by the body. Armory Comm'n of Alabama v. Staudt, 388 So.2d 991, 993 (Ala.1980)."
Rodgers v. Hopper, 768 So.2d 963, 966 (Ala.2000).
The Board of Chiropractic Examiners is a legislatively created body. § 34-24-140, Ala.Code 1975. The Board is authorized to control the licensing of chiropractors, § 34-24-161, and is charged with regulating the chiropractic profession, § 34-24-166. Although the Board may collect certain fees to generate revenue, it is required by law to deposit those funds in the State Treasury, which sets aside those funds for the Board's use. § 34-24-143. Under § 34-24-143, those funds are appropriated to the Board "to defray the expenses incurred" in carrying out the Board's charges.
Our examination of the statutes creating and empowering the Board shows that the Board is a regulatory body that receives its funding from the State. Therefore, we conclude that the Board is a State agency and, consequently, is entitled to § 14 immunity. Because this immunity, when applied to a governmental entity, is absolute, the circuit court properly dismissed all the claims against the Board.

IV.
We now consider the question of immunity for the Board members, who have been sued in both their official and their individual capacities and under both State and Federal law. Because the immunities applicable to the State claims differ somewhat from the immunity pertinent to the lone Federal claim, we will address the Federal claim separately.

A. Immunity From Mooneyham's § 1983 Claim

Mooneyham's federal constitutional claim was brought pursuant to 42 U.S.C. § 1983. Mooneyham alleges that the Board and several of its members communicated defamatory statements to third parties and thereby deprived him of a liberty or property interest in his reputation; their actions, he says, violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The defendants argue that they are immune from suit as to this claim because, they say, Mooneyham has not alleged a violation of a clearly established constitutional right. We agree.
The threshold question for determining whether the doctrine of qualified immunity applies to a given constitutional claim is whether the plaintiff has alleged the violation of a clearly recognized constitutional right. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Regarding this question, the United States Supreme Court has said:
"A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is `clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail *205 the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits. One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit."
Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).
In Siegert v. Gilley, Frederick A. Siegert, a clinical psychologist, sued Melvyn Gilley, Siegert's supervisor at a hospital operated by the Federal Government. Siegert claimed that Gilley had injured his reputation. Siegert specifically claimed that Gilley had deprived him of a "liberty interest" secured by the Fifth Amendment to the United States Constitution, by issuing a "defamatory" statement, in the form of an unfavorable recommendation, to another health-care facility with which Siegert sought employment. The Supreme Court held that "[Siegert's] allegations, even if accepted as true, did not state a claim for violation of any rights secured to him under the United States Constitution." Siegert, 500 U.S. at 227, 111 S.Ct. 1789. The Court said, "Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." Id. at 233, 111 S.Ct. 1789.
The Supreme Court's refusal in Siegert to recognize an injury to one's reputation as a deprivation of a constitutionally protected liberty interest forecloses Mooneyham's ability to defeat the individual defendants' immunity defenses. Therefore, we conclude that the trial court properly dismissed Mooneyham's § 1983 claim against these defendants.

B. Mooneyham's Malicious-Prosecution and Tortious-Interference Claims

Mooneyham's malicious-prosecution and tortious-interference claims both originate from Mooneyham's allegation that the Board's action against him was wrongful. Mooneyham essentially claims that the Board wrongly proceeded against him. He also alleges that the Board later defamed him by making its subsequent adjudication a matter of public record. The Board members contend, however, that their actions are protected by quasi-judicial immunity.
Quasi-judicial immunity is akin to judicial immunity, although it is somewhat narrower in scope. See Ex parte Phelps, 612 So.2d 1177, 1181 (Ala.1992) ("`Quasi-judicial immunity is more limited than the immunity afforded to judges and extends only to those acts committed within the scope of the actor's jurisdiction and with the authorization of law.'") (quoting Carden v. Hand, 407 F.Supp. 451, 482 (S.D.Ala.1975)). With respect to judicial immunity, this Court has said:
"`Whenever the state confers judicial powers upon an individual, it confers therewith full immunity from private suits. In effect, the State says to the officer, that these duties are confided to his judgment; that he is to exercise his judgment fully, freely, and without favor, and he may exercise it without fear; that the duties concern individuals, but they concern more especially the welfare of the State, and the peace and happiness of society; that if he shall fail in a faithful discharge of them, he shall be called to account as a criminal; but that in order that he may not be annoyed, disturbed, and impeded in the performance of these high functions, a dissatisfied individual shall not be suffered to call in question his official action in a suit for damages.'Cooley on Torts, 408."
Coleman v. Roberts, 113 Ala. 323, 329, 21 So. 449, 450 (1896). The policy supporting *206 quasi-judicial immunity is the same. As the United States Supreme Court said in Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), "Judges have absolute immunity not because of their particular location within the Government but because of the special nature of their responsibilities." 438 U.S. at 511, 98 S.Ct. 2894. Quasi-judicial immunity, when applicable, is absolute. Ex parte Colagross, 674 So.2d 1315, 1316 (Ala.1996); accord Butz, 438 U.S. at 514, 98 S.Ct. 2894 (holding that administrative officials performing adjudicatory functions are entitled to absolute immunity for official acts).
Mooneyham contends that the members of the Board are entitled to the same immunity to which most administrative officials are generally entitled, that is, "discretionary immunity" of the character discussed in Ex parte Cranman, 792 So.2d 392 (Ala.2000), and not quasi-judicial immunity. We disagree.
The Supreme Court, in Butz v. Economou, supra, addressed this issue with respect to an administrative tribunal within the United States Department of Agriculture. The tribunal had issued an administrative complaint alleging that Arthur Economou, a registered merchant, had intentionally failed to maintain minimal financial requirements prescribed by Department of Agriculture regulations. The chief hearing examiner of the Department sustained the complaint. The examiner's decision was then affirmed by the judicial officer of the Department, who was entrusted by the Secretary of Agriculture with decisional authority in enforcement proceedings. Economou tried unsuccessfully in a federal district court to enjoin the administrative proceedings. After the Department had issued its decision, Economou sued the chief hearing examiner, the judicial officer, and several officials associated with the prosecution of the complaint against him, seeking damages. He alleged that the defendants had made the administrative complaint available to third parties, without providing them his answer, and that the defendants had issued a press release reporting that he had committed a violation of Department regulations. The defendants responded to these allegations with claims of quasi-judicial immunity. The district court dismissed the case. See 438 U.S. at 480, 98 S.Ct. 2894. The United States Court of Appeals for the Second Circuit reversed as to the district court's holding that the defendants were entitled to quasi-judicial immunity; the Court of Appeals held that the Department officials were entitled only to discretionary immunity. See 438 U.S. at 480, 98 S.Ct. 2894. The Supreme Court reversed, stating that administrative officials performing duties that are characteristic of the judicial process are entitled to quasi-judicial immunity. Butz, 438 U.S. at 512-13, 98 S.Ct. 2894.
We conclude that the Supreme Court's reasoning in Butz v. Economou applies in the present case, where Board members serving as administrative officials performed a judicial functionthe adjudication of a complaint. Therefore, any claims against the Board members arising out of that proceeding are barred by quasi-judicial immunity.

V.
Mooneyham's final claim involves an allegation of conspiracy. We have stated that "`liability for civil conspiracy rests upon the existence of an underlying wrong and [that] if the underlying wrong provides no cause of action, then neither does the conspiracy.'" Ex parte Alabama Dep't of Transp., 764 So.2d 1263, 1271 (Ala.2000) (quoting Jones v. BP Oil Co., 632 So.2d 435, 439 (Ala.1993)). Because we have held earlier in this opinion that *207 Mooneyham has no other actionable claims, his conspiracy claim necessarily fails. Therefore, we affirm the circuit court's judgment of dismissal as to this claim as well.

VI. Conclusion

The trial court's judgment of dismissal is affirmed.
AFFIRMED.
MOORE, C.J., and HARWOOD and STUART, JJ., concur.
SEE, J., concurs in the judgment; and concurs in part and concurs in the result in part, as to the opinion.
SEE, Justice (concurring in the judgment; and concurring in part and concurring in the result in part, as to the opinion).
I concur in the judgment of affirmance, and I concur in the main opinion, except as to Part IV.B. As to that part of the main opinion, I concur in the result. I do not reach the question of the scope of quasi-judicial immunity, because I believe the Board members are entitled to discretionary immunity under the rule proposed in Ex parte Cranman, 792 So.2d 392 (Ala. 2000). In Cranman, a plurality of this Court proposed a rule to govern State-agent, or discretionary, immunity. That rule proposed in Cranman was adopted in Ex parte Butts, 775 So.2d 173, 178 (Ala. 2000). It provides, in pertinent part:
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
". . . .
"(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications[.]
". . . .
"Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
". . . .
"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
Cranman, 792 So.2d at 405. The Board members' actions clearly fall within the scope of part (2)(a) (dealing with administrative adjudications) of this Court's rule governing discretionary immunity. I believe Mooneyham did not present sufficient evidence to support a finding that the Board members acted "maliciously, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law." Therefore, I would hold that they are entitled to discretionary immunity.
I concur in the remainder of the main opinion. Therefore, I concur in the affirmance of the trial court's judgment dismissing Mooneyham's claims.