BOLIN, Justice.
The following supervisory employees with the Alabama Department of Public Safety (“the Department”) filed this petition for a writ of mandamus directing Judge Marvin Wayne Wiggins to dismiss Linda Sanders’s claims against them on the basis that they are entitled to State-agent immunity: Maj. Roscoe Howell, highway patrol division chief; Capt. Mike Manlief, trooper commander; Maj. Charles Andrews, service division chief; Lt. Durwood White, post commander-Selma; Sgt. Jermaine Isaac, Trooper Kerry Horton’s supervisor; Cpl. Jason Burch, Trooper Kerry Horton’s supervisor; and Cpl. Charles Bitel, Trooper Kerry Horton’s supervisor (hereinafter sometimes referred to collectively as “the supervisors”).

Facts and Procedural History

On October 3, 2008, Sanders, as next friend and parent of S.E., sued the Department; State Trooper Kerry Horton; Col. J. Christopher Murphy, director of the Department; and the supervisors. Horton and the supervisors were sued in both their individual and their official capacities. The complaint alleged the following: That on or about June 4, 2008, Trooper Horton made a traffic stop of a vehicle driven by Allah Bishop in which S.E. was a passenger; that as a result of that stop Allah Bishop was taken into custody by another officer; that Horton was left alone with S.E.; that Horton had S.E. get into his police car; that Horton then drove S.E. to another area; that Horton began making sexual advancements toward S.E., which she rejected; that Horton ejaculated semen onto S.E.; that Horton requested oral sex from S.E. and S.E. refused; that Horton forcibly kissed S.E. on the neck and breast; and that Horton eventually took S.E. back to Bishop’s vehicle and advised her not to mention what had happened.
The trial court dismissed the Department as a defendant. The trial court also dismissed all claims against Col. Murphy and the supervisors in their official capacities. Col. Murphy and the supervisors, thereafter, filed a Rule 12(b)(6), Ala. R. Civ. P., motion based solely upon the complaint. Specifically, they moved the trial court to dismiss all claims against them in their individual capacities based on the defense of State-agent immunity. In response to the motion, the trial court dismissed the claims against only Col. Murphy. The supervisors filed this petition for a writ of mandamus asking this Court to direct the trial court to dismiss Sanders’s claims against them on the basis of State-agent immunity. On October 14, 2009, this Court ordered Sanders to file an answer and brief, which she did not do. Accordingly, we have before us only the supervisors’ petition, which includes a copy of the complaint.

Applicable Law and Standard of Review

“Inasmuch as the issue before us is whether the trial court correctly denied a Rule 12(b)(6), Ala. R. Civ. P., motion to dismiss, ‘[t]his Court must accept the allegations of the complaint as true.’ Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002). Moreover, as the defendants sought only a Rule 12(b)(6) dismissal without resort to facts supplied by affidavit or other evidentiary material outside the allegations of the complaint, and as the trial court accordingly treated the motion only as what it was, a motion to dismiss and not a motion for summary judgment with eviden- *1255 tiary materials outside the allegations of the complaint, those allegations themselves are the only potential source of factual support for the defendants’ claims of immunity. Rule 12(b), Ala. R. Civ. P.; Mooneyham v. State Bd. of Chiropractic Examiners, 802 So.2d 200 (Ala.2001); Garris v. Federal Land Bank of Jackson, 584 So.2d 791 (Ala.1991); Hales v. First Nat’l Bank of Mobile, 380 So.2d 797 (Ala.1980).
“ ‘ “Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995).... Our review is further limited to those facts that were before the trial court. Ex parte American Resources Ins. Co., 663 So.2d 932, 936 (Ala.1995).’
“Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala.1998).
“ ‘The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. We note a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.’
“Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993) (citations omitted). Accord Cook v. Lloyd Noland Found., Inc., 825 So.2d 83, 89 (Ala.2001), and C.B. v. Bobo, 659 So.2d 98, 104 (Ala.1995). ‘We construe all doubts regarding the sufficiency of the complaint in favor of the plaintiff.’ Ex parte Haralson, 853 So.2d 928, 931 (Ala.2003). ‘[A] motion to dismiss is typically not the appropriate vehicle by which to assert ... qualified immunity or State-agent immunity and ... normally the determination as to the existence of such a defense should be reserved until the summary-judgment stage, following appropriate discovery.’ Ex parte Alabama Dep’t of Mental Health & Mental Retardation, 837 So.2d 808, 813-14 (Ala.2002).”
Ex parte Alabama Dep’t of Youth Servs., 880 So.2d 393, 397-98 (Ala.2003).

State-Agent Immunity

The supervisors claim that they are entitled to State-agent immunity under the standard set forth by a plurality of this Court in Ex parte Cranman, 792 So.2d 392 (Ala.2000), and adopted in Ex parte Butts, 775 So.2d 173 (Ala.2000). Specifically, they maintain that count IV of Sanders’s complaint asserts a cause of action for negligent hiring and supervision, which, they say, falls within category (2) of the factors set forth in Ex parte Cran-man. They also maintain that Sanders’s complaint makes no allegations that the supervisors acted willfully, maliciously, fraudulently, in bad faith, or beyond their authority so as to remove their State-agent immunity.
In Ex parte Cranman, 792 So.2d at 405, this Court restated the rule governing State-agent immunity:
“A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
*1256 “(1) formulating plans, policies, or designs; or
“(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
“(a) making administrative adjudications;
“(b) allocating resources;
“(c) negotiating contracts;
“(d) hiring, firing, transferring, assigning, or supervising personnel; or “(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
“(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons; or “(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
“Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
“(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.”
Although the complaint in this case is not artfully pleaded, it appears that Sanders alleges that the supervisors are liable based on claims of negligence, the tort of outrage, and assault and on the theory of respondeat superior. We quote the pertinent parts of the complaint:[1]
“Count III
“27.
“28. On or about June 4, 2008, [Horton] assaulted Plaintiff, S.E.
“29. As a proximate result of the assault ... Plaintiff received the following injuries and damages: a. She suffered and continues to suffer mental anguish/emotional distress; b. She was embarrassed and humiliated; [and] c. She was unlawfully detained.
“Count IV
“30.
“31. Defendants ... failed to properly train and/or supemse ... Horton, resulting in his inability to apply the cornet state policy regarding questioning and, interacting with citizens during a traffic stop.
“32. Defendants failed to conduct psychological testing in order to determine whether ... Horton is a fit and proper person to carry a weapon and enforce the laws of the State of Alabama.
“33. Defendants failed, to provide current training, testing, and, seminars to determine ... Horton’s current mental and physical fitness to continually function in his capacity as an Alabama State Trooper.
“34. As a proximate result of the negligent training/supervision committed *1257 by ... Horton, Plaintiff received the following injuries and damages: a. She suffered and continues to suffer mental anguish and emotional distress; b. She was embarrassed and humiliated; [and] c. She was unlawfully detained.
“Count V
35.
36. It is averred [that] each act of ... Horton giving rise to liability, as previously stated, [was a] non-discretionary function[ ] in that none of the acts were within the authority granted ... Horton by the State of Alabama. It is also averred:
“a. The nature and importance of the functions performed by ... Horton, particularly the act of sexually] assaulting Plaintiff, S.E.
“b. The extent and imposition of liability for ... Horton’s acts will have no [e]ffect on the impairment of the free exercise of ... Horton’s or other Patrol Officer’s exercise of discretion. Nor would the imposition of liability be vexatious or likely to affect the proper exercise of discretion.
37. It is averred [that] ... Horton’s acts as previously noted exceeded the general scope of the authority granted him by the State of Alabama and reasonably necessary to serve in the capacity of a Highway Patrolman.
38. Kerry Horton’s acts as previously stated were of a tortious character. It is further alleged [that] ... Horton’s acts were not privileged in that they ‘exceeded or abused the privilege’ specifically afforded ‘public officers’ while engaged in the exercise of discretionary function.
39. As a proximate result of the violation of non-discretionary functions, the plaintiff received the following injuries and damages: a. She suffered and continues to suffer mental anguish and emotional distress; b. She was embarrassed and humiliated; [and] c. She was unlawfully detained.
“40. Plaintiff claims punitive damages.
“Count VI
“41.
“42. Plaintiff alleges that the conduct of ... Horton, stated more specifically herein, is so outrageous and unconscionable a behavior as to shock the social conscience of the community and to deviate from the socially accepted norms and standards of the community as a whole.
“43. As a proximate result of the violation of non-discretionary functions, the plaintiff received the following injuries and damages: a. She suffered and continues to suffer mental anguish and emotional distress; b. She was embarrassed and humiliated; [and] c. She was unlawfully detained.
“44.
“Count VII
“45.
“46. This count is based on a responde-at superior relationship between the Defendants, Kerry Horton and Defendant, Department of Public Safety or Unknown Parties, in that all times material hereto, Kerry Horton was an agent, employee or servant of the Department of Public Safety and/or Unknown Parties [and] was acting within the line and scope of its employment.”
(Emphasis added.)
 Once it is determined that State-agent immunity applies, State-agent immunity is withheld upon a showing that the
*1258 State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. Cranman, 792 So.2d at 405. At first glance, it appears that the activities of which Sanders complains in count IV of her complaint fall squarely within category (2) of the Cranman formula. However, because this Court is required to view the allegations in the complaint most strongly in Sanders’s favor, we cannot rule out at this stage whether the supervisors may have acted beyond their authority in failing to discharge duties pursuant to detailed rules or regulations. A State agent acts beyond authority and is therefore not immune from liability when he or she “fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.” Ex parte Butts, 775 So.2d 173, 178 (Ala.2000). Although Sanders does not refer in her complaint to any specific departmental rules or regulations the supervisors allegedly violated, she nonetheless refers in paragraph 31 to “state policy.” Count IV of her complaint also references “psychological testing” and “current training, testing, and seminars.” In Ex parte Butts, this Court stated:
“Given the question presented by this mandamus petition — whether the employees are entitled to an order dismissing the families’ claims made against them in their individual capacities, on the ground that as to those claims the families’ complaint does not state against them any claim upon which relief can be granted — we conclude that the employees have not shown that they have ‘a clear legal right ... to the order sought.’ Ex parte United Serv. Stations, Inc., ... 628 So.2d [501] at 503 [ (Ala.1993) ]. At first blush, it appears that some claims, such as those regarding the use of personnel, hiring and supervising personnel, and the formulation of the demolition plan, are due to be dismissed, pursuant to the Cranman test. However, if any employee failed to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist, or acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law, then it is possible that that employee would not be entitled to State-agent immunity. As this Court stated in Patton [v. Black, 646 So.2d 8 (Ala.1994) ], ‘[i]t is not for this court to determine, based on the complaint, whether the plaintiff will ultimately prevail, but only if he may possibly prevail.’ 646 So.2d at 10. It is conceivable that the families could prove facts that would show that one or more of the employees failed to discharge duties pursuant to a checklist or acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law. If so, the families ‘may possibly prevail’ on their claims. Therefore, the trial court properly denied the employees’ motion to dismiss the claims stated against them in their individual capacities.
“After the parties have had the opportunity to conduct discovery, the employees will have the opportunity to seek a summary judgment on the ground that they are entitled to State-agent immunity. If they make such a motion based on that ground and the trial court denies it, then they can again ask this Court to review their immunity claims, either by petitioning for permission to appeal, pursuant to Rule 5, Ala. R.App. P., or by petitioning for a writ of mandamus, pursuant to Rule 21, Ala. R.App. P.”
775 So.2d at 178 (emphasis added).
When the complaint is viewed most strongly in Sanders’s favor, it is conceivable that she could prove facts that would show that the supervisors failed to discharge duties pursuant to specific departmental rules or regulations. If so, Sand *1259 ers may possibly prevail on her claims. Accordingly, the trial court properly denied the supervisors’ motion to dismiss the claims stated against them in their individual capacities.

Respondeat Superior

The supervisors also asks this Court to issue the writ of mandamus because, they say, count VII of the complaint asserts a cause of action based on the doctrine of respondeat superior and, as a matter of law, the doctrine of respondeat superior does not hold supervisors, as co-employees, vicariously liable for the torts of their subordinates. In making this argument, the supervisors are attempting to address, by mandamus review, an issue other than immunity. A writ of mandamus is not available to review the denial of a motion to dismiss based on the defense that the plaintiffs claim cannot be premised on a theory of respondeat superior. See Ex parte Liberty Nat’l Life Ins. Co., 825 So.2d 758 (Ala.2002) (holding that the denial of a motion to dismiss or a motion for a summary judgment generally is not reviewable by a petition for a writ of mandamus, subject to certain narrow exceptions such as immunity). Accordingly, we decline to address this issue.

Conclusion

Because the allegations in the complaint are the only source of factual support for the supervisors’ defense of immunity and because a motion to dismiss is typically not the appropriate vehicle by which to assert State-agent immunity, we deny the petition.
PETITION DENIED.
COBB, C.J., and LYONS, STUART, and MURDOCK, JJ., concur.

. Count I was dismissed and count II alleges a cause of action against only Horton.