PER CURIAM.
The Honorable Joseph Phelps, Judge of the Fifteenth Judicial Circuit, petitions this Court for a writ of prohibition, or, in the alternative, a writ of mandamus, directed to the Court of Criminal Appeals. Judge Phelps ordered the Montgomery County office of the Alabama Board of Pardons and Paroles (“the Board”) to “intensively supervise” William Harris as a condition of Harris’s remaining free on bail pending the trial of criminal charges against him.[1] In response to a petition by the Board, the Court of Criminal Appeals prohibited Judge Phelps from enforcing that order. Judge Phelps now asks this Court to prohibit the Court of Criminal Appeals from enforcing its order, or to order that court to set aside its order.[2]
This controversy began when defendant William Harris, prior to his criminal trial in the Fifteenth Judicial Circuit, allegedly made threats to injure himself, his wife, and his immediate family. Upon receiving this information, the State moved to revoke, or to increase the amount of, Harris’s bail. After a hearing, Judge Phelps denied the State’s motion, holding that he “had no basis to hold the defendant without bond.” Judge Phelps did, however, wish to impose certain conditions on Harris’s bail in order to ensure the safety of the parties involved. To achieve this, he ordered Harris to have no contact with his wife; he also ordered the Board to “intensively supervise” Harris until his trial date, and to report to the district attorney any deviation by Harris from the order.
The Board objected, asserting that the court had no authority to order such supervision before the defendant was convicted. The Board also believed that such precon-viction supervision might deprive Harris of a constitutionally protected liberty interest. The Board further objected that it might be subject to liability either to Harris under 42 U.S.C. § 1983 or to a third party for negligent supervision if Harris were to injure a third party while under the supervision of the Board. Judge Phelps insisted on compliance with the order and threatened to use his contempt powers if the Board refused to obey.
The Board petitioned the Court of Criminal Appeals for a writ of prohibition. That court issued the writ and prohibited Judge Phelps from enforcing his order. Pursuant to Rule 21(e), Ala.R.App.P., Judge Phelps now petitions this Court for a writ of prohibition or, in the alternative, a writ of mandamus.
Judge Phelps first argues that he derives his authority to compel the Board to “intensively supervise” Harris prior to his trial from the language of Ala.Code 1975 § 15- *1179 22-35, and Rules 7.2, 7.3(b), and 7.5, Ala.R. of Crim.P.
Initially, we must note that a trial judge normally has the authority to impose on a defendant’s bail any conditions that he believes necessary to preserve the safety of the public and to assure that the defendant will return to court at the appointed time. Rules 7.2 and 7.3(b), Ala.R.Crim.P.; see also Shabazz v. State, 440 So.2d 1200, 1202 (Ala.Cr.App.1983). Judge Phelps seeks to couple this inherent authority of the judiciary to set conditions on bail with the legislative directive in § 15-22-35 that the officers of the Board cooperate with the judiciary. Section 15-22-35 provides:
“Parole officers employed by the board of pardons and paroles, in addition to supervision of parolees under the direction of the board, shall cooperate with courts exercising criminal jurisdiction in supervising probationers whose sentences have been suspended or entering of judgment of conviction has been postponed by such courts, and they shall make such reports to the courts as the board, in cooperation' with the courts, may direct.”
Compare Ala.Code 1975, § 15-22-56(a) (Supp.1991), which gives the Board authority to determine which persons under the supervision of its probation and parole officers are deserving of “intensive supervision.” Judge Phelps does not rely on § 15-22-56(a) as authority for his actions, however.
The express language of § 15-22-35 undermines Judge Phelps’s contention. The cooperation between the Board and the court system mandated- by the statute comes into play only after a defendant has been duly convicted; there is no suggestion that the Board possesses any authority over preconviction detainees. In fact, all of the general duties enumerated in the general provision outlining the duties of the Board, Ala.Code 1975, § 15-22-24, presuppose a conviction. Judge Phelps has presented no other authority to support a conclusion that the legislature intended for § 15-22-35 to apply in cases where a defendant has not yet been convicted.
Judge Phelps further argues that even if § 15-22-35 did not grant him the power to order the Board to “intensively supervise” Harris, he was justified in his actions because the Board has assumed this supervisory duty in a contract with the Montgomery County Commission (“the County”).
The Board does have the authority to enter into contracts to further its objectives. Ala.Code 1975, § 15-22-24(d). Moreover, a person or organization generally may voluntarily undertake responsibility for a defendant; such responsibility may include furnishing security to assure that the defendant returns to court at the appointed time after being released on bail. Rule 7.1(e), Ala.R.Crim.P. More specific and germane to the present controversy is Rule 7.3(b)(3), Ala.R.Crim.P., which clearly allows such an assignment of supervisory duty by a judge as a condition of an order of release. This rule provides:
“(b) Additional Conditions. An order of release may include any one or more of the following conditions reasonably necessary to secure a defendant’s appearance:
[[Image here]]
“(3) Placing the defendant in the custody of a designated person or organization agreeing to supervise the defendant.”
(Emphasis added.)
The Board argues that Judge Phelps’s order makes it an involuntary surety and that there is no authority in Rule 7.1(e), Rule 7.3(b)(3), or elsewhere for a court to make a person or entity serve involuntarily as a surety. The Board states that Judge Phelps released Harris on a $500 unsecured bond. It argues that, instead of requiring it to become an involuntary surety in response to the State’s motion to revoke or to increase Harris’s bond, Judge Phelps should have increased the bond and required surety. While these arguments generally have merit, they do not respond to Judge Phelps’s contention.
Judge Phelps contends that his actions were within his discretion, because, he says, Rule 7.3(b)(3) allows him to order such supervision, and because the Board *1180 has in fact agreed to supervise pretrial detainees in certain circumstances.
The contract between the County and the Board, entered into on February 3, 1992, provides that the Board shall furnish certain, specific services to the County with respect to pretrial detainees.[3] In pertinent part, the contract provides as follows:
“The Alabama Board of Pardons and Paroles and the Montgomery County Commission hereby enter into this agreement, whereby the Montgomery County Commission (hereinafter ‘the County’) agrees to pay the Alabama Board of Pardons and Paroles (hereinafter ‘the Board’) to provide services for the public good. The County finds that its Detention Facility is crowded, and that a significant portion of the jail population consists of pretrial detainees. The County has requested the Board’s assistance in alleviating the problem, in the belief that both justice and fiscal policy will be served by entering into this agreement.
“The Board agrees to assign three Probation and Parole officers and one clerical employee to perform the duties established under this program. This number of employees will be assigned to the program for twelve months, commencing on Feb. 3, 1992. These officers will interview pre-trial detainees in the Montgomery County Detention Facility and investigate such information as the courts may request, in order to determine suitability of such prisoners for release, pending trial, without bail or at reduced bail.
“Pre-release investigations will be conducted under the authority of Section 15-12-5(c), Ala.Code 1975. The officers are authorized to investigate and report to the appropriate court, such information as may be relevant to a determination of indigency pursuant to Section 15-12-5(b), Ala.Code 1975. The Board notes that such information is as relevant to the Court’s bail decision as it is to the appointment of counsel. The Board specifically notes that investigation of a detainee’s employment history and his history of reliability in keeping appointments [is] relevant to both decisions.
“The Board agrees to assign these officers to monitor the conduct of not more than eighty (80) releasees at any time. If the officers receive credible information indicating that a releasee is not complying with a court ordeT or that a releas-ee is unlikely to appear at a scheduled court hearing, the officers will report that information to the court or to the district attorney.”
(Emphasis added.)
Again, the specific language of the document refutes Judge Phelps’s contention. The wording of the contract contemplates that the Board will assume only certain narrowly circumscribed duties. Those duties are limited to pretrial interview, evaluation, and investigation for purposes of determining the suitability of the defendant for release without bail or at reduced bail. Here, the decision of whether to grant bail has already been made by the trial judge; the judge seeks assistance in implementing his decision, not in making it. In fact, a full and fair reading of the contract illustrates that its primary purpose is pretrial evaluation and investigation of defendants to determine whether the defendants are indigent for purposes of bail and appointment of counsel. It is true that some amount of monitoring of releasees is contemplated by the contract in the final paragraph we have quoted here. The tenor of the agreement, though, together with the very limited manpower specified therein, suggests that the agreement contemplates the monitoring of only a limited class of non-violent offenders. The ongoing intensive supervision of a potentially dangerous person not yet convicted is not within the purview of this agreement, and therefore the Board cannot be said to have agreed to intensively supervise accused persons such as Harris who threaten violent conduct.
Finally, Judge Phelps argues that the Board has no authorization to assert *1181 Harris’s constitutional rights because, he says, Harris assented to the conditions of bail. While this is probably a correct contention, it ignores the fact that the Board itself has rights at stake in this controversy. A primary interest of the Board here is freedom from liability to, or even having to defend actions filed by, third parties who may be injured by the defendant while he is under the supervision of the Board. Judge Phelps contends that this fear is unwarranted, because Board officers are entitled to quasi-judicial immunity while carrying out judicial orders. Public officers carrying out judicial orders are normally entitled to quasi-judicial immunity. International Molders & Allied Workers, AFL-CIO v. Buchanan Lumber Birmingham, 459 F.Supp. 950, 952 (N.D.Ala.1978), aff'd without opinion, 618 F.2d 782 (5th Cir.1980). Quasi-judicial immunity is not absolute, however, as illustrated by the following language in Carden v. Hand, 407 F.Supp. 451, 482 (S.D.Ala.1975),[4] where the court stated: “Quasi-judicial immunity is more limited than the immunity afforded to judges and extends only to those acts committed within the scope of the actor’s jurisdiction and with the authorization of law.” Here, a plaintiff bringing an action against the Board for negligent supervision would have at least a tenable argument that the Board was acting outside its jurisdiction in supervising pretrial detainees. Hence, potential liability for the Board is not absolutely precluded.
The Board’s most compelling interest lies not in its potential tort liability, but in the consequences of subjecting it to orders of this kind. It is obvious that the Board’s resources are scarce, both as a general proposition and as illustrated by the fact that the contract calls for only three officers to be employed in performing these duties, and that a few orders such as this one could easily consume all the Board’s available resources.
Because the Board has not agreed to intensively supervise pretrial defendants who are free on bail in general, or Harris in particular, and because a circuit court has no authority to impose such a duty on a person, officer, or entity against its wishes, in the absence of a clear legislative creation of such a duty, the Court of Criminal Appeals ruled correctly.
WRIT DENIED.
ALMON, SHORES, ADAMS, STEAGALL and INGRAM, JJ., concur.
MADDOX, HOUSTON and KENNEDY, JJ., dissent.

. The materials before us do not disclose the offense charged.

. The attorney general’s office has filed the petition and brief on behalf of Judge Phelps. Because the petition was filed in Judge Phelps’s name, we make no attempt to distinguish positions taken by the attorney general and positions actually taken by Judge Phelps.

. The Board describes this contract as being experimental and as "pushing the limits of the Board’s jurisdiction.” We express no opinion as to whether the Board’s undertakings in this contract exceed its power and authority.

. Carden v. Hand appears as a separate case reported with Turner v. American Bar Ass'n, 407 F.Supp. 451 (N.D.Texas 1975).