PER CURIAM.
D.A.R. appeals from a judgment by the Baldwin Circuit Court dismissing his complaint against R.E.L., D.H., and R.H. We affirm.
I. Facts and Procedural History
On November 20, 2015, D.A.R., a licensed attorney practicing in Alabama, filed a complaint in the Baldwin Circuit Court against R.E.L., D.H., and R.H. R.E.L. is also a licensed attorney, who, at all times material to the allegations in the complaint, was employed as an assistant general counsel for the Alabama State Bar ("the ASB"). D.H. and R.H. are brothers; they are not attorneys.
According to the complaint, at some point before December 2007, R.E.L. and *1032 D.H. began "a personal, professional and/or sexual relationship," and R.E.L. and R.H. began "a personal and/or professional relationship." D.A.R. alleged that in December 2007, at R.E.L.'s recommendation and with his assistance, D.H. and R.H. "filed a baseless complaint against [D.A.R.] with the ASB." D.A.R. alleged that the motivation for the complaint was to use it "as a means to protect [D.H. and R.H.] from liability for a debt owed by [them] to a client represented by [D.A.R.] and/or as retaliation for his role in representing that client."
According to D.A.R., R.E.L. knew when it was filed that the complaint against D.A.R. was baseless in fact and in law. D.A.R. also alleged that R.E.L. did not reveal his relationships with D.H. and R.H. to the Disciplinary Commission of the ASB or to D.A.R., and R.E.L. did not recuse himself from the ASB proceedings against D.A.R., despite his relationships with D.H. and R.H. Instead, R.E.L. persisted in prosecuting the complaint allegedly because of his relationships with D.H. and R.H. D.A.R. alleged that, after he had spent almost two years defending himself against the groundless charges, the ASB dismissed the charges with a letter of caution that D.A.R. reluctantly accepted.
D.A.R. alleged that on November 24, 2013, he first became aware that "[R.E.L.] and [D.H.] had an inappropriate sexual relationship which preexisted the December 2007 complaint" and that relationship "continued throughout the pendency of the ASB proceedings against [D.A.R.]." In 2014, D.A.R. informed the ASB of the relationship between R.E.L. and D.H. and the alleged connection between that relationship and the December 2007 complaint. D.A.R. further alleged that, at some later time,
"[the] ASB, through its elected leadership representatives, ... admitted to [D.A.R.] that the complaint filed against him by [D.H. and R.H.] was baseless, that the ASB proceedings against him were inappropriate, tainted and wrongful from their inception and at all times thereafter, and that, on behalf of the ASB, [R.E.L.] improperly prosecuted [D.A.R.] and deceived and suppressed information from [D.A.R.] relating to the baseless complaint and prosecution against him."
As noted above, on November 20, 2015, D.A.R. filed his complaint against R.E.L., D.H., and R.H.[1] D.A.R. asserted claims of abuse of process, malicious prosecution, negligence, wantonness, tort of outrage/intentional infliction of emotional distress, slander, libel, breach of fiduciary duty, fraudulent suppression/concealment, fraudulent misrepresentation, and civil conspiracy.
On January 6, 2016, D.H. and R.H. filed a motion to dismiss the claims against them and a brief in support of their motion. D.H. and R.H. argued that they were entitled to "absolute immunity based upon the nature of the quasi-judicial function of the disciplinary process" and based on Rule 15(a), Ala. R. Disc. P. On the same date, R.E.L. filed a motion to dismiss the claims against him on the ground that he was entitled to immunity based on Rule 15(a) and (b), Ala. R. Disc. P., because at all relevant times he was acting in his capacity as an assistant general counsel for the ASB, and on the grounds of State immunity, State-agent immunity, judicial immunity, and quasi-judicial immunity. On March 14, 2016, D.A.R. filed responses in opposition to the motions to dismiss.
The trial court held a hearing on the motions to dismiss, and, on April 5, 2016, *1033 the trial court entered an order granting the motion to dismiss filed by R.E.L. and an order granting the motion to dismiss filed by D.H. and R.H. The trial court did not state a rationale in either order for its decision.
On April 25, 2016, D.H. and R.H. filed a motion to seal the record on the ground " 'that disclosure will result in undue harm or embarrassment to an individual,' " quoting Holland v. Eads, 614 So.2d 1012, 1015 (Ala. 1993). The motion to seal further alleged that the "allegations could further pose a serious threat of harassment, exploitation, or other particularized harm to the parties in this action." The trial court granted the motion on April 27, 2016.[2]
On May 5, 2016, D.A.R. filed a "Motion to Vacate the Order[s] of Dismissal." See Rule 59(e), Ala. R. Civ. P. In the motion, D.A.R. conceded that R.E.L., D.H., and R.H. were entitled to an absolute privilege against his slander and libel claims, but he contended that the defendants were not entitled to immunity for the other claims he asserted against them. Additionally, D.A.R. alleged that he had obtained new information, specifically information that the initial grievance against him had been referred to and denied by the County Bar Grievance Committee of the county in which D.A.R. practiced law; that R.E.L., D.H., and R.H. had fabricated false evidence to submit to the ASB Disciplinary Commission; that an independent investigator engaged by the ASB to investigate the matter had issued an independent report to the ASB but that the ASB had subsequently refused to provide a copy of that report to D.A.R., despite the ASB's assurance that the report would be provided to him; and that the ASB's then president admitted to D.A.R. that the prosecution of D.A.R. by the ASB was wrongful and baseless from its inception.
Along with his motion to vacate, D.A.R. filed a first amended complaint, omitting his claims alleging slander and libel and realleging the other claims. The first amended complaint also changed certain allegations to assert that R.E.L.'s misconduct was not within the scope of his authority as an assistant general counsel for the ASB.[3]
On May 8, 2016, D.H. and R.H. filed a motion to dismiss the first amended complaint on the ground that the trial court's orders dismissing the original complaint were final judgments that deprived the trial court of further jurisdiction to consider *1034 the amended complaint. On May 10, 2016, R.E.L. filed a response to the first amended complaint in which he adopted and incorporated the arguments made by the D.H. and R.H. in their motion to dismiss the first amended complaint.
On May 13, 2016, D.A.R. filed a motion requesting that the trial court unseal the record and requesting that the trial court "set aside the April 25 order, conduct a hearing, ... take evidence as necessary, and enter an order denying [D.H.] and [R.H.'s] motion to seal."
On June 7, 2016, the trial court entered an order denying D.A.R.'s motion to vacate the April 2016 orders dismissing the original complaint. On the same date, the trial court entered an order denying D.A.R.'s motion to unseal the record, and it entered respective orders declaring moot D.H. and R.H.'s motion to dismiss the first amended complaint and R.E.L.'s response to the first amended complaint.
D.A.R. appeals. We note that, on appeal, D.H. and R.H. filed a motion to seal the record. D.A.R. did not respond to that motion, and the motion was granted. D.A.R. has presented no argument that the trial court erred as to the sealing of the record or that the record should be unsealed on appeal. See Muhammad v. Ford, 986 So.2d 1158, 1165 (Ala. 2007) ("An argument not made on appeal is abandoned or waived." (quoting Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1124 n. 8 (Ala. 2003) ) ). We therefore do not consider that issue in our analysis.
II. Standard of Review
As this Court has noted,
"immunity issues should be decided as early as possible once raised. See, e.g., Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) ('One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.')."
Vandenberg v. Aramark Educ. Servs., Inc., 81 So.3d 326, 338-39 (Ala. 2011).
"The standard of review applicable to motions to dismiss is set forth in Ex parte City of Birmingham, 624 So.2d 1018, 1020 (Ala. 1993), quoting Seals v. City of Columbia, 575 So.2d 1061, 1063 (Ala. 1991) :
" 'It is a well-established principle of law in this state that a complaint, like all other pleadings, should be liberally construed, Rule 8(f), Ala. R. Civ. P., and that a dismissal for failure to state a claim is properly granted only when it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief. Winn-Dixie Montgomery, Inc. v. Henderson, 371 So.2d 899 (Ala. 1979). Stated another way, if under a provable set of facts, upon any cognizable theory of law, a complaint states a claim upon which relief could be granted, the complaint should not be dismissed. Childs v. Mississippi Valley Title Insurance Co., 359 So.2d 1146 (Ala. 1978).
" 'Where a [Rule] 12(b)(6) motion has been granted and this Court is called upon to review the dismissal of the complaint, we must examine the allegations contained therein and construe them so as to resolve all doubts concerning the sufficiency of the complaint in favor of the plaintiff. First National Bank v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258 (Ala. 1981). In so doing, this Court does not consider whether the plaintiff will ultimately prevail, only whether he has stated a claim under which he may possibly prevail. Karagan v. City of Mobile, 420 So.2d 57 (Ala. 1982).' "
Patton v. Black, 646 So.2d 8, 9-10 (Ala. 1994) (emphasis omitted).
*1035 III. Analysis
D.A.R. argues that the trial court erred in dismissing his complaint because, he says, R.E.L., D.H., and R.H. have not established that they are entitled to immunity for the actions he alleges they committed in connection with the Bar complaint filed against him.[4]
Rule 15(a), Ala. R. Disc. P., states: "Complaints and petitions submitted pursuant to these Rules or testimony with respect thereto shall be absolutely privileged, and no lawsuit predicated thereon may be instituted." This Court has not decided a case applying Rule 15(a). A number of other states, however, have statutes or disciplinary rules that contain nearly identical language to Rule 15(a) -- "no lawsuit predicated [on a Bar complaint and a petition] may be instituted."[5] One probable reason for this broad uniformity is that the American Bar Association Model Rules of Disciplinary Enforcement, Rule 12, titled "Immunity," states, in part:
"A. From Civil Suits. Communications to the board, hearing committees, or disciplinary counsel relating to lawyer misconduct or disability and testimony given in the proceedings shall be absolutely privileged, and no lawsuit predicated thereon may be instituted against any complainant or witness."
In its commentary to this rule, the American Bar Association states:
"The Rule recommends absolute privilege rather than qualified privilege; qualified privilege may not protect against harassment made possible by simply alleging malice in a lawsuit. ...
"A policy of conferring absolute immunity on the complainant encourages those who have some doubt about a lawyer's conduct to submit the matter to the proper agency, where it may be examined and determined. Without immunity, some valid complaints will not be filed. The individual lawyer may suffer some hardship as the result of the occasional filing of a malicious complaint, but a profession that wants to retain the power to police its own members must be prepared to make some sacrifice to that cause."
American Bar Association Model Rules of Disciplinary Enforcement, Rule 12 Commentary.
Courts throughout the nation that have applied language similar to Rule 15(a) have concluded that a Bar complainant is entitled *1036 to absolute immunity from an action predicated upon such a complaint. See, e.g., Field v. Kearns, 43 Conn. App. 265, 275, 682 A.2d 148, 153 (1996) ("A rule establishing absolute immunity for bar grievants protects the public confidence and the integrity of our judicial system."); Tobkin v. Jarboe, 710 So.2d 975, 977 (Fla. 1998) ("We acknowledge the possibility that groundless or baseless complaints against attorneys may sometimes be filed by individuals. However, Bar complainants must be encouraged to step forward with legitimate complaints, which will further the important public policy of disciplining attorney misconduct."); Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Haw. 92, 105-06, 176 P.3d 91, 104-05 (2008) ; Netterville v. Lear Siegler, Inc., 397 So.2d 1109, 1113 (Miss. 1981) ; see also Caffey v. Alabama Supreme Court, 469 F. App'x 748, 752 (11th Cir. 2012) (not selected for publication in the Federal Reporter) (discussing Rule 15, Ala. R. Disc. P., and affirming the district court's conclusion "that Defendant Jones, the state prosecutor, enjoyed [absolute] immunity for filing a state bar complaint against Caffey"). See generally Mark E. Hopkins, Open Attorney Discipline: New Jersey Supreme Court's Decision to Make Attorney Disciplinary Procedures Public--What It Means to Attorneys and to the Public, 27 Rutgers L.J. 757, 780 (1996) (stating that "[a]bsolute immunity for complainants against civil litigation is the rule in thirty-one jurisdictions" and listing Alabama as one of those jurisdictions[6] ).
D.A.R. concedes that the claims in his original complaint alleging slander and libel are barred by Rule 15(a), but he contends that his other claims are not foreclosed by that rule. But the language of Rule 15(a) is unequivocal. As the Louisiana Supreme Court has explained:
"The key words ... are 'absolutely privileged.' A 'privilege' as it relates to the law of libel and slander is defined as an 'exemption from liability for the speaking or publishing of defamatory words concerning another, based on the fact that the statement was made in the performance of a duty, political, judicial, social, or personal.' Black's Law Dictionary, 1360 (4th ed. 1968). An 'absolute privilege' is defined as a 'privilege that immunizes an actor from suit, no matter how wrongful the action might be, and even though it is done with an improper motive.' Black's Law Dictionary, 1215 (7th ed. 1999). Louisiana jurisprudence has consistently held that communications made in judicial or quasi-judicial proceedings carry an absolute privilege so that witnesses, bound by their oaths to tell the truth, may speak freely without fear of civil suits for damages. Knapper v. Connick, ... 681 So.2d 944, 946, citing Bienvenu v. Angelle, 254 La. 182, 223 So.2d 140 (1969), overruled on other grounds, Gonzales v. Xerox Corporation, 254 La. 182, 320 So.2d 163 (1975). This court has recognized the difference between absolute immunity, which defeats a suit at the outset, and qualified immunity, which depends on circumstances and motivations and often must be established by evidence at trial. Knapper, ... 681 So.2d at 948.
"The key words in the additional sentence of Rule XIX, § 12(A) -- and no lawsuit predicated thereon may be instituted against any complainant or witness -- are 'instituted' and 'no lawsuit.'
*1037 In the context of this legal rule, the word 'instituted' is defined as 'to begin or start; commence.' Black's Law Dictionary, 801 (7th ed. 1999). The words 'no lawsuit' clearly foreclose the institution of any lawsuit whatsoever, regardless of the cause or causes of action pled therein. Thus, Respondent's argument in the instant matter that Rule XIX, § 12(A), as applied by this court, leaves the door open for suits for malicious prosecution and/or abuse of process is untenable. It is absolutely clear that Rule XIX, § 12(A)[,] prohibits all lawsuits predicated on the complaint or the testimony, and, thus, provides additional protection to complainants and witnesses that the former rule did not provide. The policy decision by this court to protect those who file complaints against lawyers from retaliatory lawsuits avoids a chilling effect upon the proper function of the lawyer regulatory system. This provision is consistent with the overall purpose of Rule XIX to engender confidence by the public in Louisiana's lawyer regulatory system."
In re Raspanti, 8 So.3d 526, 533-34 (La. 2009) ; see also Morgan & Pottinger, Attorneys, P.S.C. v. Botts, 348 S.W.3d 599, 603-04 (Ky. 2011) ("Though few cases exist interpreting the typically broad language of these rules, at least four courts have specifically concluded that the privilege would bar even claims relating to the act of filing the complaint, such as malicious prosecution or abuse of process. See Wallace v. Jarvis, 119 N.C. App. 582, 459 S.E.2d 44 (1995) ; Jarvis v. Drake, 250 Kan. 645, 830 P.2d 23 (1992) (interpreting rule which affords judicial immunity to participants in the attorney discipline process); In re Smith, 989 P.2d 165 (Colo. 1999) (interpreting former rule); Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 176 P.3d 91 (2008)."); see also Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Haw. at 107, 176 P.3d at 106 ("Here, the language of RSCH Rule 2.8 clearly and unambiguously states that 'no lawsuit predicated upon [complaints or testimony given with respect thereto] may be instituted.' Thus, we hold that malicious prosecution suits are barred."); State v. Baker, 293 N.W.2d 568, 576 (Iowa 1980) ("In the interest of protecting the public from unethical practices, persons should not be dissuaded from filing complaints by threats of defamation suits or other litigation.").
Based on the foregoing, we conclude that any claims against D.H. and R.H. -- regardless of their potentially false and malicious nature -- are barred by Rule 15(a).
As to D.A.R.'s claims against R.E.L., D.A.R. alleged in his complaint that "[i]n December 2007, at the recommendation of [R.E.L.] and with the assistance of [R.E.L.] acting under the authority of the ASB, [D.H.] and [R.H.] filed a baseless complaint against [D.A.R.] with the ASB. [R.E.L.] was aware that the complaint against [D.A.R.] was baseless in fact and in law."[7] Based on the foregoing allegations and other language in the complaint, we assume, without deciding, that the actions R.E.L. took before the filing of the Bar complaint against D.A.R., coupled *1038 with the filing of the complaint itself, are sufficient to state a cause of action against R.E.L.[8]
As noted above, R.E.L. asserted the following grounds for immunity from D.A.R.'s action in his motion to dismiss: Rule 15(a) and (b), Ala. R. Disc. P.,[9] State immunity, State-agent immunity, judicial immunity, and quasi-judicial immunity. As to quasi-judicial immunity, R.E.L. discussed Mooneyham v. State Board of Chiropractic Examiners, 802 So.2d 200 (Ala. 2001).
In Mooneyham, E. Lamar Mooneyham, a licensed chiropractor, filed a civil action against the State Board of Chiropractic Examiners and certain members of that Board as a result of the Board's disciplinary action against him. In addressing Mooneyham's appeal from the dismissal of his complaint against the Board and the Board members, we noted:
"According to his complaint, Mooneyham has been licensed to practice chiropractic in Alabama since 1990. During that time, he alleges, he has formed business relationships with certain insurance companies. He alleges that those relationships involve performing 'utilization reviews' of other Alabama chiropractors. Mooneyham also claims that he has frequently testified as an expert witness in civil proceedings against other Alabama chiropractors. According to Mooneyham's complaint, much of his work has been adverse to the interests of certain Board members or their families and associates.
"On February 8, 1995, the Board, by way of an administrative complaint, charged Mooneyham with six violations of various laws, rules, or regulations applicable to the chiropractic profession. The Board ultimately found Mooneyham guilty of four violations and imposed punishment that included a $14,600 fine and a revocation of his license to practice chiropractic in Alabama. The adjudication and judgment passed upon votes by the [Board members]. Mooneyham's complaint alleges that the sanctions imposed on him were among the most severe sanctions ever imposed by the Board for any misconduct, including that seen in the most serious cases. Mooneyham further alleged that after August 6, 1997, [certain of the Board members] maliciously, willfully, wantonly, and in bad faith authorized the communication of the Board's findings to specific third parties, including the State of Florida and the Federation of Chiropractic Licensing Boards, and made those findings a matter of public record."
802 So.2d at 202 (emphasis added).
Mooneyham's complaint "include[d] allegations of defamation; tortious interference with business relations; malicious prosecution; conspiracy; and a violation of his federal constitutional rights (brought pursuant to 42 U.S.C. § 1983 )." Id. at 202.
*1039 "The Board and the individual defendants timely moved to dismiss Mooneyham's claims, pursuant to Rule 12(b)(6), Ala. R. Civ. P., for failing to state claims for which relief could be granted. Specifically, the defendants argued that they were all entitled to various forms of immunity. The circuit court granted the motions."
802 So.2d at 201. Mooneyham appealed, and this Court affirmed the order dismissing Mooneyham's complaint.
In deciding to affirm the dismissal of Mooneyham's claims, this Court first noted as to the underlying disciplinary proceedings against Mooneyham:
"Mooneyham appealed the Board's findings and its punishment order to the Montgomery Circuit Court. After hearing evidence, that court found that Mooneyham's disciplinary action had been taken, and the punishment imposed, in retaliation for his performing utilization reviews for insurance companies and for the adverse testimony he had given in civil proceedings against certain Alabama chiropractors. The court concluded that the Board's conduct had been arbitrary and capricious, and it ordered the reinstatement of Mooneyham's license, a reversal of the fine, and a dismissal of all other proceedings against Mooneyham. The Court of Civil Appeals, on February 26, 1999, affirmed the circuit court's order, without an opinion. State Bd. of Chiropractic Exam'rs v. Mooneyham (No. 2980001), 776 So.2d 223 (Ala. Civ. App. 1999) (table)."
802 So.2d at 202 (emphasis added).
As to Mooneyham's appeal, this Court first concluded that the Board was entitled to State immunity as to Mooneyham's state-law claims. 802 So.2d at 203-04 ; see also Ala. Const. 1901, § 14. The Court then affirmed the dismissal of Mooneyham's claims brought pursuant to 42 U.S.C. § 1983, because "[t]he Supreme Court's refusal in Siegert [v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991),] to recognize an injury to one's reputation as a deprivation of a constitutionally protected liberty interest forecloses Mooneyham's ability to defeat the individual defendants' immunity defenses." 802 So.2d at 205. Finally, the Court addressed the immunity of the individual Board members as to Mooneyham's state-law claims, and a plurality of the Court, sitting in a five-member division, concluded that the dismissal of Mooneyham's complaint was proper on the ground of quasi-judicial immunity.[10]
"Mooneyham's malicious-prosecution and tortious-interference claims both originate from Mooneyham's allegation that the Board's action against him was wrongful. Mooneyham essentially claims that the Board wrongly proceeded against him. He also alleges that the Board later defamed him by making its subsequent adjudication a matter of public record. The Board members contend, however, that their actions are protected by quasi-judicial immunity.
"Quasi-judicial immunity is akin to judicial immunity, although it is somewhat *1040 narrower in scope. See Ex parte Phelps, 612 So.2d 1177, 1181 (Ala. 1992) (" 'Quasi-judicial immunity is more limited than the immunity afforded to judges and extends only to those acts committed within the scope of the actor's jurisdiction and with the authorization of law.' ") (quoting Carden v. Hand, 407 F.Supp. 451, 482 (S.D. Ala. 1975) ). With respect to judicial immunity, this Court has said:
" ' "Whenever the state confers judicial powers upon an individual, it confers therewith full immunity from private suits. In effect, the State says to the officer, that these duties are confided to his judgment; that he is to exercise his judgment fully, freely, and without favor, and he may exercise it without fear; that the duties concern individuals, but they concern more especially the welfare of the State, and the peace and happiness of society; that if he shall fail in a faithful discharge of them, he shall be called to account as a criminal; but that in order that he may not be annoyed, disturbed, and impeded in the performance of these high functions, a dissatisfied individual shall not be suffered to call in question his official action in a suit for damages." -- Cooley on Torts, 408.'
" Coleman v. Roberts, 113 Ala. 323, 329, 21 So. 449, 450 (1896). The policy supporting quasi-judicial immunity is the same. As the United States Supreme Court said in Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), 'Judges have absolute immunity not because of their particular location within the Government but because of the special nature of their responsibilities.' 438 U.S. at 511, 98 S.Ct. 2894. Quasi-judicial immunity, when applicable, is absolute. Ex parte Colagross, 674 So.2d 1315, 1316 (Ala. 1996) ; accord Butz, 438 U.S. at 514, 98 S.Ct. 2894 (holding that administrative officials performing adjudicatory functions are entitled to absolute immunity for official acts).
" Mooneyham contends that the members of the Board are entitled to the same immunity to which most administrative officials are generally entitled, that is, 'discretionary immunity' of the character discussed in Ex parte Cranman, 792 So.2d 392 (Ala. 2000) , and not quasi-judicial immunity. We disagree.
"The Supreme Court, in Butz v. Economou, supra, addressed this issue with respect to an administrative tribunal within the United States Department of Agriculture. The tribunal had issued an administrative complaint alleging that Arthur Economou, a registered merchant, had intentionally failed to maintain minimal financial requirements prescribed by Department of Agriculture regulations. The chief hearing examiner of the Department sustained the complaint. The examiner's decision was then affirmed by the judicial officer of the Department, who was entrusted by the Secretary of Agriculture with decisional authority in enforcement proceedings. Economou tried unsuccessfully in a federal district court to enjoin the administrative proceedings. After the Department had issued its decision, Economou sued the chief hearing examiner, the judicial officer, and several officials associated with the prosecution of the complaint against him, seeking damages. He alleged that the defendants had made the administrative complaint available to third parties, without providing them his answer, and that the defendants had issued a press release reporting that he had committed a violation of Department regulations. The defendants responded to these allegations with claims of quasi-judicial immunity. The district court dismissed the case. See 438 U.S. at 480, 98 S.Ct. 2894. The United States *1041 Court of Appeals for the Second Circuit reversed as to the district court's holding that the defendants were entitled to quasi-judicial immunity; the Court of Appeals held that the Department officials were entitled only to discretionary immunity. See 438 U.S. at 480, 98 S.Ct. 2894. The Supreme Court reversed, stating that administrative officials performing duties that are characteristic of the judicial process are entitled to quasi-judicial immunity. Butz, 438 U.S. at 512-13, 98 S.Ct. 2894.
"We conclude that the Supreme Court's reasoning in Butz v. Economou applies in the present case, where Board members serving as administrative officials performed a judicial function -- the adjudication of a complaint. Therefore, any claims against the Board members arising out of that proceeding are barred by quasi-judicial immunity."
Mooneyham, 802 So.2d at 205-06 (emphasis added).
In relying on Mooneyham, R.E.L. presented the trial court with authority that quasi-judicial immunity protects even retaliatory, arbitrary, and capricious actions by officials when those actions are related to the filing and adjudication of disciplinary complaints those officials are charged with administering. And, it is important to note that the Mooneyham plurality rejected Mooneyham's argument that the Board members were not entitled to absolute immunity, but to discretionary immunity, i.e. "the same immunity to which most administrative officials are generally entitled." 802 So.2d at 206. Further, in affirming the trial court's dismissal of Mooneyham's claims on the ground of quasi-judicial immunity, the Mooneyham Court was
"mindful that '[m]otions to dismiss under Rule 12(b)(6) [, Ala. R. Civ. P.,] should be granted sparingly, and [that] such a dismissal is proper only when it appears beyond a doubt that the ... plaintiff can prove no set of facts in support of the claim which would entitle the ... plaintiff to relief.' Quality Homes Co. v. Sears, Roebuck & Co., 496 So.2d 1, 2 (Ala. 1986)."
802 So.2d at 203.
D.A.R. discussed Mooneyham in his response to R.E.L.'s motion to dismiss, but D.A.R. did not argue to the trial court that the Mooneyham plurality's discussion of the law of quasi-judicial immunity was inaccurate. Instead, D.A.R. emphasized the Mooneyham Court's statement that quasi-judicial immunity is "narrower in scope" than judicial immunity, and he urged that "[t]he defense of quasi-immunity of a prosecutor recognizes a clear exception that applies to the facts stated in the complaint." Specifically, D.A.R. emphasized that Mooneyham cited Ex parte Phelps, 612 So.2d 1177 (Ala. 1992), quoting Carden v. Hand, 407 F.Supp. 451 (S.D. Ala. 1975) (reported sub nom. Turner v. American Bar Ass'n ). D.A.R. stated in his response to R.E.L.'s motion to dismiss:
" Ex parte Phelps, cited by Mooneyham in the preceding paragraph, also discusses this exception:
" 'Quasi-judicial immunity is not absolute, however, as illustrated by the following language in Carden v. Hand, 407 F.Supp. 451, 482 (S.D. Ala. 1975), where the court stated: "Quasi-judicial immunity is more limited than the immunity afforded to judges and extends only to those acts committed within the scope of the actor's jurisdiction and with the authorization of law." Here, a plaintiff bringing an action against the Board for negligent supervision would have at least a tenable argument that the Board was acting outside its jurisdiction in supervising pretrial detainees. Hence, potential liability for the Board is not absolutely precluded. [Emphasis supplied by D.A.R.]'
*1042 "[ 612 So.2d at 1181.]
" Ex parte Phelps in turn cites Carden v. Hand, 407 F.Supp. 451, 482 (S.D. Ala. 1975), cited as Turner v. Am. Bar Ass'n, 407 F.Supp. 451, 482 (N.D. Tex. 1975) aff'd sub nom. Taylor v. Montgomery, 539 F.2d 715 (7th Cir. 1976) and aff'd sub nom. Pilla v. Am. Bar Ass'n, 542 F.2d 56 (8th Cir. 1976) :
" 'From the Doctrine of Judicial Immunity has come the Doctrine of Quasi-Judicial Immunity. Alzua v. Johnson, 231 U.S. 106, 34 S.Ct. 27, 58 L.Ed. 142 (1913) ; Bauers v. Heisel, 361 F.2d 581 (C.A.3,1966) and cases cited therein at footnote 7. Quasi-Judicial Immunity is more limited than the immunity afforded Judges and extends only to those acts committed within the scope of the actor's jurisdiction and with the authorization of law. Lewis v. Brautigam, 227 F.2d 124 (C.A.5, 1955).'
"The Lewis case cited by Carden states:
" ' "... a quasi-judicial officer, such as a prosecuting attorney, who acts outside the scope of his jurisdiction and without authorization of law, cannot shelter himself from liability by the plea that he is acting under color of office." Cooper v. O'Connor, 69 App. D.C. 100, 99 F.2d 135, 138, 118 A.L.R. 1440 [ (1938) ]; 43 Am. Jur., Public Officers, § 277.' (Emphasis supplied [by D.A.R.] ).
" Mooneyham, Phelps, Carden and Lewis all recognize an exception applicable to prosecutorial immunity. In his motion [R.E.L.] incorrectly offers Mooneyham as authority for the position that he acted with full judicial immunity. Under the facts pled in the Complaint, [R.E.L.] has at most an argument that he acted with limited quasi-judicial immunity. Assuming that he acted with limited quasi-judicial immunity, there is a broad spectrum of conduct for which a prosecutor like [R.E.L.] would not act with any immunity. [D.A.R.] submits that [R.E.L.'s] conduct was such that it was outside of the scope of any quasi-judicial immunity."
In his brief on appeal, D.A.R. does not cite or discuss Mooneyham, Phelps, Carden, or Lewis v. Brautigam, 227 F.2d 124 (5th Cir. 1955).[11] Instead, D.A.R. first discusses principles of State-agent immunity, *1043 citing Ex parte Cranman, 792 So.2d 392, 405 (Ala. 2000), and Ex parte Alabama Department of Transportation, 764 So.2d 1263 (Ala. 2000) ; the burden-shifting process applicable to motions to dismiss based on the ground of State-agent immunity; and this Court's recognition that the issue of State-agent immunity generally should be resolved through a motion for a summary judgment rather than a motion to dismiss, citing Johnson v. Reddoch, 198 So.3d 497 (Ala. 2015).
D.A.R. argues that
"prosecutors have only qualified immunity for torts occurring in the investigative phase of a case. Their acts in making a pre-complaint investigation have no quasi-judicial protection from immunity, and are measured by the state-agent standard. Like state-agent immunity, a defendant asserting prosecutorial immunity has the initial burden of showing that such immunity is justified for the function in question. That order of proof is inconsistent with the procedure for a motion to dismiss; so this remedy is typically inappropriate where the defendant claims prosecutorial immunity."
D.A.R.'s brief, at p. 11 (emphasis added). D.A.R. continues:
"The defendant must bear the initial burden of proof that the acts for which he is sued are discretionary and, therefore, afford him the shield of immunity. Only then does the burden shift to the plaintiff to prove that the defendant's acts were fraudulent, willful, malicious, or in bad faith. See Ex parte Alabama Department of Transportation, 764 So.2d 1263 (Ala. 2000)."
D.A.R.'s brief, at p. 15. D.A.R. then argues:
"Unlike purely State agents, prosecutors also have absolute immunity from liability for some acts that are intimately connected with the judicial process. However, prosecutors have only qualified immunity for torts occurring in the investigative phase of a case. Their acts in making a pre-complaint investigation have no quasi-judicial protection or immunity, and are measured by the state-agent standard of Cranman and Ex parte Alabama Department of Transportation. See McConico v. Patterson, [204 So.3d 409] (Ala. Civ. App .... 2016)."
D.A.R.'s brief, at 17 (emphasis added).
D.A.R. then proceeds to discuss the Court of Civil Appeals' decision in McConico v. Patterson, 204 So.3d 409 (Ala. Civ. App. 2016), purportedly as addressing "the interplay among the general rules [established by Ex parte Cranman and Ex parte Alabama Department of Transportation ], Rule 12(b) dismissal law, and the absolute immunity afforded prosecutors engaged in the judicial process," D.A.R.'s brief, at pp. 17-18, and the burden-shifting process as to a defendant who claims quasi-judicial immunity. D.A.R. argues that McConico supports the conclusion that a defendant who claims absolute immunity has the initial burden of proving that such immunity applies to the function in question. D.A.R. continues:
"The McConico Court held that '[b]ecause [the district attorney] has not yet presented the issue of prosecutorial immunity to the trial court, he has clearly *1044 not met that burden. Thus, any consideration of the issue of prosecutorial immunity is premature, and this court will not affirm that portion of the trial court's judgment dismissing the malicious prosecution claim on that ground at this point in the proceedings.' [ 204 So.3d at 418 ] (emphasis added)."
D.A.R.'s brief, at p. 21.
D.A.R.'s discussion of the holding in McConico, however, is inexact. Fernessa McConico filed an action against Brandon Falls, the Jefferson County District Attorney, alleging malicious prosecution. In the trial court, Falls asserted in his motion to dismiss that McConico's claim should be dismissed because a Jefferson County grand jury had indicted McConico. Falls did not raise or argue in the trial court that he was entitled to prosecutorial immunity. The trial court dismissed McConico's malicious-prosecution claim based on the fact of the indictment.
On appeal, the Court of Civil appeals concluded that the trial court erred in dismissing McConico's claim on that basis because an indictment merely creates a presumption as to the existence of probable cause. The Court of Civil Appeals noted that presumption can be overcome by the plaintiff, and McConico was not afforded an opportunity to rebut the presumption.
In Falls's application for rehearing, he asserted, for the first time, that he was entitled to prosecutorial immunity. The Court of Civil Appeals chose to address this contention on the merits and concluded that "[b]ecause Falls has not yet presented the issue of prosecutorial immunity to the trial court, he has clearly not met th[e] burden" " 'of showing that [absolute] immunity is justified for the function in question.' " 204 So.3d at 418 (quoting Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (emphasis omitted) ).
Unlike the defendant in McConico, R.E.L. asserted the defense of absolute immunity from the outset in the trial court, and R.E.L. presented arguments to the trial court establishing why quasi-judicial immunity should apply to the facts presented in D.A.R.'s complaint. D.A.R. thus had the burden of establishing that R.E.L.'s argument was incorrect. McConico does not support D.A.R.'s contention that his complaint should not have been dismissed.
More importantly, we note that D.A.R. has effectively abandoned the argument he made in the trial court addressing the merits of the application of quasi-judicial immunity based on the rationale of Mooneyham. His argument on appeal instead conflates the analysis of State-agent immunity and its exceptions with the functional analysis used for purposes of quasi-judicial immunity and then focuses on the procedural propriety of dismissal. And, to the extent D.A.R. discusses the merits of quasi-judicial immunity, he does not discuss Alabama precedents establishing the limits of the state-law defense of quasi-judicial immunity; instead, he discusses precedents addressing federal-law quasi-judicial immunity for purposes of actions under 42 U.S.C. § 1983, particularly as to how such immunity applies to prosecutors.[12] Our state law as to quasi-judicial *1045 immunity, however, is not limited to the parameters of federal law. See, e.g., Bogle v. Galanos, 503 So.2d 1217, 1219 (Ala. 1987) (noting that prosecutorial immunity "under state law ... is at least as broad as immunity under § 1983"). And, even as to federal law, this Court has noted, after "review[ing] a considerable number of federal cases which have grappled with the difficult questions of prosecutorial immunity," that "[t]he federal circuit courts are not always uniform in deciding whether absolute or qualified immunity applies." Bogle, 503 So.2d at 1218. In other words, D.A.R. has shifted his argument as to quasi-judicial immunity from the argument he presented to the trial court, and he has failed to demonstrate that the trial court erred by dismissing his complaint on the grounds he presented to it. See, e.g., Snider v. Morgan, 113 So.3d 643, 655 (Ala. 2012) (arguments made to the trial court but not made on appeal are waived); see also Campbell v. Taylor, 159 So.3d 4, 13 (Ala. 2014) (" Rule 28(a)(10), Ala. R. App. P., requires that the parties present in their brief the legal authorities that support their position. 'If they do not, the arguments are waived.' White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala. 2008)."); and Boshell v. Keith, 418 So.2d 89, 92 (Ala. 1982) ("When an appellant fails to argue an issue in its brief, that issue is waived."). Accordingly, the trial court's judgment must be affirmed.
III. Conclusion
Based on the foregoing, we conclude that D.H. and R.H. are entitled to immunity from suit pursuant to Rule 15(a) and that D.A.R. has failed to establish that the trial court erred in dismissing his claims against R.E.L. on the ground of quasi-judicial immunity. The trial court's judgment is affirmed.
AFFIRMED.
Parker, Main, Wise, Sellers, and Mendheim, JJ., concur.
Shaw and Bryan, JJ., concur in the result.
Bolin, J., recuses himself.
SHAW, Justice (concurring in the result).
I agree that Alabama law bars D.A.R.'s claims against D.H. and R.H. Rule 15(a), Ala. R. Disc. P. As to R.E.L., I also agree that Alabama law concerning quasi-judicial immunity, as discussed in Mooneyham v. State Board of Chiropractic Examiners, 802 So.2d 200 (Ala. 2001), applies generally to officials of the Alabama State Bar and that such immunity applies here with respect to R.E.L. That said, I note that there are exceptions to quasi-judicial immunity that appear to me to be applicable in this case. However, because those exceptions are not invoked and argued on appeal, this Court is bound under our well established principles of judicial review to affirm the judgment in favor of R.E.L.
Bryan, J., concurs.

The ASB is not a defendant in this action.

D.H. and R.H. also filed a motion in this Court to seal the record.

In D.A.R.'s motion to vacate, he explained the reason for the changes as follows:
"At the oral argument of the motion to dismiss, there was an exchange during which the parties debated the impact of the claims in the Complaint that [R.E.L.] was acting in the line and scope of his employment by the Alabama State Bar. The argument of [R.E.L.'s] counsel seemed to imply that this allegation alone somehow entitled [R.E.L.] to absolute and unqualified immunity. [D.A.R.] submits that such an argument is completely misplaced. Every defendant in civil cases in Alabama whose conduct fell into an exception created by qualified immunity was acting within the line and scope of their respective employment with a state or quasi-state agency. As expressed in the legal authorities presented by the parties in their briefs, it is their actions that are nominally within the line and scope of their employment, but not authorized by law, that subject them to civil liability. The allegations of the Complaint clearly allege conduct by [R.E.L.] that was not authorized by law, and [D.A.R.] has filed an Amended Complaint adding the factual allegations recited above, and adding specific allegations that the conduct of [R.E.L.] was outside the scope of his jurisdiction as an Assistant General Counsel, was not authorized by law and was in direct violation of applicable law."
(Emphasis omitted.)

In their appellate briefs, the parties engage in a preliminary dispute concerning whether the trial court correctly refused to entertain D.A.R.'s first amended complaint filed after the trial court had entered its orders dismissing D.A.R.'s original complaint. The difference between the allegations in D.A.R.'s original complaint and his first amended complaint are discussed above. See note 3 and accompanying text. Based on the rationale for our decision affirming the trial court's April 2015 orders dismissing D.A.R.'s complaint, see discussion infra, we do not address the issue whether the trial court erred by refusing to allow D.A.R. to amend his complaint after the dismissal orders had been entered.

States with identical or nearly identical language in their disciplinary rules include: California (Cal. Bus. & Prof. Code § 6094 ); Hawaii (Hawaii R. Sup. Ct., Disc. Rule 2.8); Iowa (I.C.A. Rule 38.9); (Louisiana (La. Sup. Ct. R. Disc. 19, § 12); Mississippi (§ 73-3-345, Miss. Code Ann.); North Dakota Rule 6, N.D. R. Lawyer Disc.); Rhode Island (Art. III, Disc. Rule 7, R.I. R. Sup. Ct.); Texas (Tex. R. Prof. Conduct 15.11); Wyoming (Rule 26, Wy. R. Disc. P.). In addition, conducting its own survey on this subject, the Kentucky Supreme Court found that, as far as prohibitions on lawsuits based on complaints or petitions against lawyers (Rule 15(a) ), "[a]t least twenty-eight states have evinced a policy decision to bar such civil suits through enactment of a court rule or statute." Morgan & Pottinger, Attorneys, P.S.C. v. Botts, 348 S.W.3d 599, 603 & n.2 (Ky. 2011) (footnote lists applicable state provisions).

The 31 jurisdictions Hopkins lists are: Alabama, Arizona, Arkansas, California, Colorado, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Michigan, Minnesota, Montana, Nebraska, New York, North Dakota, Oklahoma, Oregon, South Carolina, South Dakota, Tennessee, Texas, Utah, Washington, West Virginia, and Wyoming. See Hopkins, 27 Rutgers L.J. at 780 n.162.

D.A.R.'s first amended complaint alleged:
"9. In December 2007, at the recommendation of [R.E.L.] and with the assistance of [R.E.L.] acting outside the scope of his jurisdiction as Assistant General Counsel for the ASB and without authorization of law, [D.H.] and [R.H.] prepared a baseless grievance ... against [D.A.R.] and subsequently sent it to the ASB. [R.E.L., D.H., and R.H.] were aware that the grievance against [D.A.R.] was baseless in fact and in law. The grievance was sent by the ASB to [D.A.R.], and [D.A.R.] promptly responded with ample and irrefutable evidence proving the baseless nature of the complaint."

We note that D.A.R.'s complaint also includes allegations that R.E.L. violated the Alabama Rules of Professional Conduct. Such violations do not "give rise to an independent cause of action." Ala. Code 1975, § 6-5-578(b) ("[T]he fact that a legal service provider violated any provision of the rules of professional conduct shall not give rise to an independent cause of action ...."); see also Scope, Ala. R. Prof. Cond.; Terry Cove N., Inc. v. Marr & Friedlander, P.C., 521 So.2d 22, 23 (Ala. 1988) ("The Code of Professional Responsibility is designed not to create a private cause of action for infractions of disciplinary rules, but to establish a remedy solely disciplinary in nature.").

Rule 15(b) states: "The following shall be immune from suit for any conduct in the course of their official duties: ... (4) The General Counsel and the staff of the Office of General Counsel ...."

Justice See concluded that members of the Board were entitled to State-agent immunity, and he therefore did not "reach the question of the scope of quasi-judicial immunity." 802 So.2d at 207 (See, J., concurring in the judgment and concurring in part and concurring in the result in part as to the opinion). Justice See's position is interesting in that he was willing to dispose of the case on what is arguably a more difficult immunity to establish for purposes of a motion to dismiss for failure to state a claim. See, e.g., Ex parte Butts, 775 So.2d 173, 177 (Ala. 2000) (" '[I]t is the rare case involving the defense of [State-agent] immunity that would be properly disposed of by a dismissal pursuant to Rule 12(b)(6), [Ala. R. Civ. P.].' " (quoting Patton v. Black, 646 So.2d 8, 10 (Ala. 1994) ) ).

D.A.R. cites Mooneyham in his reply brief, but he does not cite Phelps, Carden, or Lewis in that brief. Also, D.A.R. again fails to argue in his reply brief that the Mooneyham plurality's understanding and application of quasi-judicial immunity was erroneous. Instead, D.A.R. purports to distinguish Mooneyham by arguing that the Mooneyham Court held that quasi-judicial immunity applied only to the Board's actions in adjudicating the disciplinary complaint. But, as noted above, the Board's allegedly wrongful actions described in Mooneyham were not limited to adjudicating the disciplinary complaint.
Further, D.A.R. argues, for the first time in his reply brief, that Mooneyham is "distinguishable from the present case because the trial court in that case had a record of the underlying disciplinary procedures at the motion to dismiss stage." D.A.R.'s reply brief, at p. 13. Mooneyham contains no reference to the Baldwin Circuit Court's (the trial court in Mooneyham's civil action) having received such a record from the Montgomery Circuit Court (the court that reviewed Mooneyham's appeal from the Board's disciplinary action against him) or the parties. Mooneyham merely states, apparently based on the allegations of Mooneyham's complaint, that certain Board member defendants "authorized the communication of the Board's findings to specific third parties ... and made those findings a matter of public record." 802 So.2d at 202. Further, the Mooneyham Court clearly stated:
"We are mindful that '[m]otions to dismiss under Rule 12(b)(6) [, Ala. R. Civ. P.,] should be granted sparingly, and [that] such a dismissal is proper only when it appears beyond a doubt that the ... plaintiff can prove no set of facts in support of the claim which would entitle the ... plaintiff to relief.' Quality Homes Co. v. Sears, Roebuck & Co., 496 So.2d 1, 2 (Ala. 1986). We also recognize the well-established principle that '[m]atters outside the pleadings should never be considered in deciding whether to grant a [Rule] 12(b)(6) motion.' Hales v. First Nat'l Bank of Mobile, 380 So.2d 797, 800 (Ala. 1980)."
802 So.2d at 203.
In any event, it is well settled that arguments made for the first time in a reply brief are "waived, and will not be considered by this Court." Perkins v. Dean, 570 So.2d 1217, 1220 (Ala. 1990).

D.A.R. also makes no attempt to discuss why, under state law, a functional analysis of the duties of a district attorney or other prosecutor for purposes of prosecuting criminal cases -- which includes unique risks to constitutionally protected rights -- allows an easy parallel to be drawn to the duties of an assistant general counsel for the ASB as to Bar disciplinary procedures. See Preamble, Ala. R. Disc. P. ("The purpose of lawyer discipline and disability proceedings is to maintain appropriate standards of professional conduct to protect the public and the administration of justice from lawyers who have demonstrated by their conduct that they are unable or are likely to be unable to properly discharge their professional duties.").